# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

_____

In Re:

**Levi M. Power and**
**Sherri A. Power,**

           **Debtors.**

**Bankruptcy Case**
**No. 16-40636-JDP**

_____

**Gary L. Rainsdon,**
**Chapter 7 Trustee,**

           **Plaintiff,**
**vs.**

**America First Federal Credit**
**Union,**

           **Defendant.**

**Adv. Proceeding**
**No. 16-8034-JDP**

_____

## MEMORANDUM OF DECISION
_____

**Appearances:**

    **Daniel Green, RACINE OLSON NYE & BUDGE, CHARTERED,**
    **Pocatello, Idaho, Attorney for Plaintiff.**

MEMORANDUM OF DECISION – 1

**Darwin Bingham, SCALLEY READING BATES HANSON & RASMUSSEN, P.C., Salt Lake City, Utah, Attorney for Defendant.**

## *Introduction*

This preference action comes before the Court via competing motions for summary judgment.  On May 23, 2017, chapter 7[1] trustee, Plaintiff Gary L. Rainsdon ("Trustee"), filed a Motion for Summary Judgment along with an accompanying brief, affidavit, exhibits, and statement of undisputed facts.  Dkt. Nos. 19, 20, 21, 22.  On June 6, 2017, Defendant America First Federal Credit Union ("America First") filed an opposition to Trustee's motion and responded to Trustee's undisputed facts.  Dkt. No.  26.  It also filed a Motion for Summary Judgment with an accompanying brief, affidavit, exhibits, and statement of undisputed facts. Dkt. Nos. 28, 29, 30, 31.  Trustee then filed a reply to America First's opposition to his motion, and an opposition to America First's motion.

---

[1]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION – 2

Dkt. Nos. 35, 36.   On October 14, 2017, counsel for the parties presented

argument to the Court.  Minute Entry, Dkt. No. 105.

Having taken the issues under advisement, and considered the

parties' submissions, briefs, and arguments, as well as the applicable law,

this Memorandum disposes of the motions.

### *Facts*

The motions are premised upon the same undisputed facts.

On March 5, 2016, Levi Marvin Power and Sherri Ann Power

("Debtors"), who lived in Oakley, Idaho, purchased a 2015 Chrysler Town

and Country Van ("the Vehicle") for approximately $25,000.  Trustee's Ex.

A, Dkt. No. 21-1; Resp. to Undisputed Facts at 2, Dkt. No. 27.  Debtors

financed the purchase of the Vehicle with a loan from Idaho Central Credit

Union ("ICCU"); the loan was secured by a security interest in the Vehicle.

 Trustee's Ex. B, Dkt. No. 21-2; Resp. to Undisputed Facts at 2. Trustee

asserts that ICCU's lien on the Vehicle was perfected on March 25, 2016.

Trustee's Undisputed Facts at 2.  America First notes Trustee has not

submitted any admissible evidence to support this statement, but

MEMORANDUM OF DECISION – 3

nonetheless agrees ICCU was listed as the lienholder on the title certificate for the Vehicle.  Resp. to Undisputed Facts at 3.

On April 13, 2016, Debtors decided to refinance the original purchase-money loan on the Vehicle using the proceeds of a new loan they obtained from America First via its branch office located in Ogden, Utah. Trustee's Ex. C, Dkt. No. 21-3; Resp. to Undisputed Facts at 3.  They executed a Loan and Security Agreement and Disclosure Statement ("the Note") that granted America First a security interest in the Vehicle. America First's Ex. A.  On April 14, 2016, Debtors executed an application for issuance of a new title certificate ("the First Title Application") on which America First would be listed as the new lienholder on the Vehicle. Hyde Aff. at 4; America First's Ex. B, Hyde Aff. at 13, Dkt. No. 31. However, for whatever reasons, the First Title Application was incorrectly completed; it mistakenly identified ICCU as the new lienholder, rather than America First.  Hyde Aff. at 4.

At some point, America First paid off the ICCU loan and ICCU released its lien on the Vehicle.  Hyde Aff. at 3, Dkt. No. 31; Trustee's Ex.

MEMORANDUM OF DECISION – 4

D, Dkt. No. 21-4; Resp. to Undisputed Facts at 3.  The Debtors never had

possession or control of these loan funds.  Hyde Aff. at 3.   The exact dates

that America First paid off ICCU, and that ICCU released its lien on the

Vehicle are unclear, but it is safe to assume that both events occurred

before April 28, 2016.[2]  It was on that day that the Idaho Department of

Transportation issued a new title for the Vehicle.  Trustee's Ex. D.  But

apparently due to the mistake in the First Title Application, and because

ICCU had previously released its lien, the new Certificate of Title showed

no liens on the Vehicle.  Trustee's Ex. D; Resp. to Undisputed Facts at 3.

The record given to the Court by the parties is opaque on the details

of some of the events that followed.  At some point in time, America First

learned of the error in the First Title Application[3] and immediately

_____

[2]  Counsel for Trustee asserted at the hearing that ICCU was paid, and
released its lien, on April 13, the same day the Note was executed.  However,
there is nothing on the summary judgment record to support this assertion.  On
the other hand, counsel for America First did not dispute this assertion at the
hearing.

[3] The record does not establish any particular date this occurred.  At the
hearing, counsel for America First stated he did not know when America First
became aware of the mistake in the First Title Application; he speculated that the
error was discovered either on May 1 or 2, when America First sent Debtors the

MEMORANDUM OF DECISION – 5

contacted Debtors about executing a new title application. America First's

Undisputed Facts at 3. On May 2, 2016, it forwarded a new title

application to Debtors ("the Second Title Application") to complete. Hyde

Aff. at 4. At the hearing, counsel for America First indicated the Second

Title Application was mailed to  Debtors at their request since Debtors live

in Idaho and America First's office is in Utah; counsel could not recall

whether it was sent by ordinary mail or some other, expedited method.

On May 9, 2016, Debtors signed the Second Title Application and returned

it to America First. Hyde Aff. at 5. Again, it is unclear in the record how

Debtors returned the Second Title Application to America First, or when,

for that matter. Even so, it appears America First received the executed

Second Title Application on May 20. That same day, now some 37 days

after the execution of the refinancing Note, America First submitted the

Second Title Application to the Idaho Department of Transportation.

Hyde Aff. at 5; America First's Ex. C, Hyde Aff. at 15, Dkt. No. 31. How

America First did so, is unclear in the record. America First's lien was

---

Second Title Application to sign.

MEMORANDUM OF DECISION – 6

noted on the Vehicle's new certificate of title.  The title certificate bears an

"issued" date of April 28, 2016, and a "record" date of June 1, 2016.  By

that later date, 48 days had passed since Debtors' execution of the Note.

Trustee's Ex. E, Dkt. No. 21-5.

On July 18, 2016, Debtors filed a chapter 7 petition.  Resp. to

Undisputed Facts at 2.   On November 23, 2016, Trustee commenced this

adversary proceeding, seeking to avoid America First's lien on the Vehicle

as a preference under § 547(b), and to recover the Vehicle, or its value,

under § 550(a).  Dkt. No. 1.[4]   As of May 23, 2017, approximately $70,000 in

unsecured claims had been filed in the bankruptcy case, and there are

insufficient funds available to pay all unsecured debts in full.  Trustee's

Affidavit at 2, Dkt. No. 21.

### *Summary Judgment Standard*

Rule 7056 incorporates Civil Rule 56, which sets forth the familiar

summary judgment standard for evaluating the parties' motions here:

---

[4] At the hearing, Trustee's counsel represented that Trustee is now has
possession of the Vehicle.

MEMORANDUM OF DECISION – 7

"The court shall grant summary judgment if the movant shows that there

is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Civil Rule 56(a).  A genuine dispute exists if

there is sufficient evidence for a reasonable finder of fact to hold in favor of

the non-moving party, and a fact is material if it might affect the outcome

of the proceeding.  *Far Out Prods., Inc. v. Oskar,* 247 F.3d 986, 992 (9th Cir.

2001); *Boise City/Ada Cty. Housing Auth. v. O'Brien (In re O'Brien)*, 11.2

I.B.C.R. 75, 75 (Bankr. D. Idaho 2011).

Once the moving party meets its initial burden, then the opponent

must provide evidence establishing a genuine issue of material fact for

trial.  Civil Rule 56(c); *DeVries v. Clark (In re Clark)*, 14.1 I.B.C.R. 6, 8 (Bankr.

D. Idaho 2014); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

The Court must view the evidence and any inferences that can be drawn

therefrom in a light most favorable to the non-moving party.  *Thorian v.*

*Baro Enterprises, LLC (In re Thorian)*, 387 B.R. 50, 61 (Bankr. D. Idaho 2008).

The Court may not weigh evidence in resolving motions for summary

judgment.  It may only determine whether a material factual dispute exists

MEMORANDUM OF DECISION – 8

requiring trial.  *Id.* (citing *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997)).

"When parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Housing Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations omitted).  "It is well-settled in this circuit and others that the filing of cross-motions for summary judgment, both parties asserting that there are no uncontested issues of material fact, does not vitiate the court's responsibility to determine whether disputed issues of material fact are present."  *Krommenhoek v. Gugino (In re Pfankuch)*, 393 B.R. 18, 22 (Bankr. D. Idaho 2008) (citing *Fair Housing Council of Riverside Cty.*, 249 F.3d at 1136)).

Even if the Court is not able to enter a summary judgment fully adjudicating a claim or defense, Civil Rule 56(a) provides that the Court may enter a partial summary judgment.  *See* Civil Rule 56(a); Committee Notes on Rules—2010 Amendment ("The first sentence [adding "Partial Summary Judgment] is added to make clear at the beginning that summary judgment may be requested not only as to an entire case but also

MEMORANDUM OF DECISION – 9

as to a claim, defense, or part of a claim or defense. The subdivision

caption adopts the common phrase 'partial summary judgment' to describe

disposition of less than the whole action, whether or not the order grants

all the relief requested by the motion."); *see also, Tria Beauty, Inc. v.*

*Radiancy*, 2012 WL 12919483, *2 (N.D. Cal. 2012).

## *Analysis and Disposition*

Section 547(b) provides that a bankruptcy trustee may avoid any

transfer (1) of an interest of the debtor in property; (2) to or for the benefit

of a creditor; (3) for or on account of an antecedent debt; (4) made while

the debtor was insolvent; (5) made within the ninety days immediately

preceding the filing of the petition; and (6) that enables the creditor to

receive more than such creditor would have received if the case were a

chapter 7 case, the transfer had not been made, and such creditor received

payment of such debt to the extent provided by the provisions of the Code.

But even if a transfer meets all of the requirements of § 547(b), the trustee

may not avoid it if it falls under one of the exceptions listed in § 547(c).

"Per § 547(g), the trustee bears the burden of proving these

MEMORANDUM OF DECISION – 10

elements, while the creditor . . . has the burden of proving the target

transfer is excepted from avoidance under § 547(c)." *Gugino v. Credit*

*Acceptance Corp. (In re Conklin)*, 511 B.R. 688, 692 (Bankr. D. Idaho 2014).

Under § 547(f), a debtor is presumed to be insolvent on and during the 90

days immediately preceding the petition filing date.

Trustee argues that Debtor's transfer of the security interest in the

Vehicle to America First to secure the refinance loan satisfies all of the

requirements of § 547(b) and can be avoided as a preference.  Trustee's

Mem. at 3, Dkt. No. 20.   America First disagrees, arguing that (1) the

transfer was not made on account of an antecedent debt; (2) the transfer

did not enable it to receive more in this chapter 7 case than it would have if

the transfer had not been made; (3) the "earmarking doctrine" prevents the

transfer from avoidance as a preference; and (4) the transfer is excepted

from avoidance because it was a substantially contemporaneous exchange

for new value.  America First also argues that, even if the transfer is an

avoidable preference, it is entitled to a replacement lien on the Vehicle

pursuant to § 550(e).  The Court addresses each of the America First

MEMORANDUM OF DECISION – 11

arguments below.

**A.    Debtors' transfer of the security interest to America First was on account of an antecedent debt.**

Trustee argues the security interest in the vehicle was transferred to America First on account of an antecedent debt because it was not perfected within 30 days after the Note was executed.  Tr.'s Mem. at 4. America First argues that the delay in the perfection of its security interest should not be grounds for avoiding its security interest because that delay was caused by events beyond its control.  America First's Mem. at 5.

An avoidable preference is a transfer of the debtor's property "for or on account of an antecedent debt owed by the debtor before such transfer was made . . . ."  § 547(b)(2).   A debt is an "antecedent debt" if it was created before the transfer occurred.  *Rainsdon v. Farson (In re Farson)*, 387 B.R. 784 (Bankr. D. Idaho 2008).  For purposes of a preference action, a transfer of a security interest in the debtor's property is made "at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 30 days after, such time . . . ."

MEMORANDUM OF DECISION – 12

§ 547(e)(2)(A).  If the security interest is not perfected within 30 days, the

transfer of the security interest is deemed to have been made at the time it

was perfected.  § 547(e)(2)(B).  Under this framework, if America First's

security interest was not perfected within 30 days of the execution of the

Note, "the debt, which is effective when actually made, will be made

antecedent to the delayed effective date of the transfer . . . although in fact

made concurrently with the advance of money."  *Grover v. Gulino (In re*

*Gulino)*, 779 F.2d 546, 552 (9th Cir. 1985).

### 1.    Date of perfection

Trustee asserts that America First's security interest was perfected

on June 1, 2016, the "record" date on the certificate of title issued by the

Idaho Department of Transportation.  Tr.'s Undisputed Facts at 2.

America First disputes this statement, noting the "issued" date on the

certificate of title is April 28, 2016.  Resp. to Tr.'s Undisputed Facts at 3.

Under Idaho law, America First's security interest was perfected on

the date the Idaho Department of Transportation received the properly

completed Second Title Application.  Idaho Code § 49-510(2) ("A lien is

MEMORANDUM OF DECISION – 13

perfected as of the date of the filing of a properly completed application with the department or an agent of the department."); *In re Conklin*, 511 B.R. at 695.  In *Conklin*, the "record" date on the certificate title of a vehicle was August 6, but the title application had been date-stamped by the Department as having been received on August 2.  *Id.* at 689.  The Court held that although the certificate of title showed a "record" date of August 6, under Idaho Code § 49-510, the creditor's lien on the vehicle was perfected on August 2, when the properly completed application was received by the Idaho Department of Transportation.

Here, the record shows that America First "submitted" the Second Title Application to the Idaho Department of Transportation on May 20, 37 days after the Note was executed on April 13, 2016.  America First's Undisputed Facts at 4, Dkt. No. 30.  But, for whatever reason, the certificate of title issued by the Department notes the "record" date of America First's lien as June 1, 2017, 48 days after the Note was executed.  Tr.'s Ex. E.  There is no date-stamp on the application in the record indicating when the application was received by the Department.

MEMORANDUM OF DECISION – 14

Because America First does not demonstrate or even explain what it means to have "submitted" the application, and the "record" date appearing on the tittle certificate may not in fact be the date it was received by the Department, the exact date that America First's security interest was perfected under Idaho law is unclear. Even so, it is apparent in the record that the earliest date the America First security interest was perfected was May 20, and the latest was June 1. Since either of these dates is beyond the 30-day safe harbor under § 547(e)(2), the Court can confidently conclude that Debtors' transfer of the security interest to America First is deemed to have occurred when the lien was perfected, as compared to the date when the Note was executed. Accordingly, the transfer of the security interest by Debtors to America First was on account of an antecedent debt.

### 2.    Equitable arguments

America First does not dispute this analysis, but instead appeals to the Court's sense of equity, arguing that allowing Trustee to avoid its security interest in the Vehicle under these facts would be unjust because it

MEMORANDUM OF DECISION – 15

was the Debtors' delay in returning the necessary documents to America

First that caused its security interest to not be perfected within the

statutory safe harbor.  But the Court can not help America First.  The

Supreme Court has explained that "whatever equitable powers remain in

the bankruptcy courts must and can only be exercised within the confines

of the Bankruptcy Code."  *Law v. Siegel*, 134 S.Ct. 1188, 1194 (2014)

(citations omitted).  In this context, the relative equities are dictated by the

Bankruptcy Code.  Congress has expressly provided in § 547(e)(2)(A) that,

in situations involving delayed perfection of liens, 30 days is an

appropriate safe harbor.  This Court may not effectively extend that period

in this case, or otherwise adjust the rights of the parties based upon its

own sense of justice.  As a result,  America First's equitable argument that

avoidance of its lien would be unjust under these facts is foreclosed.

**B.    Debtors' transfer of the security interest to America First enabled
it to receive more than it would have received had the transfer not
been made, and had it received payment of its debt as an
unsecured creditor in a hypothetical chapter 7 bankruptcy case.**

Trustee argues that the transfer of the security interest to America

MEMORANDUM OF DECISION – 16

First will enable it to receive more than it would have received had the

transfer not been made, and America First was required to share in

distributions from a hypothetical chapter 7 case.  America First disagrees,

arguing that this requirement is not met because the value of the estate

was not diminished as the result of its acquisition of the lien on the

Vehicle.  America First's argument lacks merit.

Section 547(b)(5) "constitutes the so-called 'greater amount test,'

which requires the court to construct a hypothetical chapter 7 case, and

determine what the creditor would have received if the case had

proceeded under chapter 7 without the alleged preferential transfer."

*Schoenmann v. Bank of the West (In re Tenderloin Health)*, 849 F.3d 1231, 1235

(9th Cir. 2017).  "[A]s long as the distribution in [the bankruptcy case] is

less than one-hundred percent, *any* payment 'on account' to an unsecured

creditor during the preference period will enable that creditor to receive

more than he would have received in liquidation had the payment not

been made."  *Elliott v. Frontier Props. (In re Lewis W. Shurtleff, Inc.)*, 778 F.2d

1416 , 1421 (9th Cir. 1985) (emphasis in original).

MEMORANDUM OF DECISION – 17

Of course, if America First had not been granted a security interest in the Vehicle to secure its loan, Trustee would sell the Vehicle, and use the proceeds to make distributions to creditors.  As an unsecured creditor in such a hypothetical chapter 7 case, America First would be entitled to a pro-rata share of such distributions along with Debtors' other unsecured creditors.  *See* §§ 726(a)(2); (b).   In contrast, because it holds a security interest in the Vehicle, America First would be entitled to all of the proceeds from the sale of the Vehicle needed to satisfy its loan balance in full.

Trustee has established that, given Debtors' assets available for liquidation, funds would not be available in a hypothetical case to pay the unsecured creditors in this case one-hundred percent of their claims.  As a result, as a matter of undisputed fact, Debtors' transfer of the security interest to America First would enable it to receive more in a hypothetical chapter 7 case than it would have had the transfer not occurred.

America First cites case law for the proposition that, viewed broadly, a refinancing transaction can not be a preference because such a

MEMORANDUM OF DECISION – 18

transaction does "not create an additional obligation and/or encumbrance of assets beyond what the debtor already had." America First's Br. at 8–9, Dkt. No. 26 (citing *Gregory v. Community Credit Co. (In re Biggers)*, 249 B.R. 872, 878 (M.D. Tenn. 2000)). According to America First, when Debtors refinanced the Vehicle, they merely substituted one secured debt for another, and the value of their assets was not diminished. Using this approach, America First contends that the transfer of the security interest did not enable it to receive a "greater amount" of its claim.

America First's argument misses the mark. That there was a diminution of a debtor's assets is important in Ninth Circuit preference case law, but only to determine if there was a transfer of a debtor's interest in property, not whether the "greater amounts test" is satisfied. Specifically, the Ninth Circuit has stated that, "[a]n exchange that does not take value away from the debtor's estate cannot be a transfer within the reach of section 547." *Wind Power Systems, Inc. v. Cannon Fin. Grp. (In re Wind Power Systems, Inc.)*, 841 F.2d 288, 292 (9th Cir. 1988); *see also In re Tenderloin Health*, 849 F.3d. 1231, 1244 (9th Cir. 2017) ("The pertinent

MEMORANDUM OF DECISION – 19

question is whether the deposit depletes the assets of the estate available

for distribution to creditors.").  And, particularly noteworthy here, in *In re*

*Wind Power Systems, Inc.*, the Ninth Circuit held that the "renewal of a lien

or security interest is not a new transfer within the meaning of section 547

if it merely continues an existing interest; it does not diminish the

collection of assets to be distributed among the general creditors."

　　　But after careful review, the Court concludes that both *In re Wind*

*Power Systems, Inc.* and *In re Biggers* are factually distinguishable from the

circumstances here in at least one important respect: the debtor's property

in those cases was *continuously* subject to the creditors' lien interests

throughout the preference period.  In *In re Wind Power Systems, Inc.*, the

debtor's property was secured by a perfected lien created by a court's

temporary protective order until the creditor's attachment lien was

perfected.  841 F.2d at 292.  And in *In re Biggers*, while the new lien on the

debtor's property was not perfected within the 30-day safe harbor

provided by § 547(e)(2)(A), the prior lien on the property was not released

until the new lien was perfected.  249 B.R. 873, 874 (Bankr. M.D. Tenn.

MEMORANDUM OF DECISION – 20

2000); *see also Chase Manhattan Mortg. Corp. v. Shapiro (In re Lee)*, 530 F.3d 458, 472 n.11 (6th Cir. 2008) (distinguishing *In re Biggers* on this point).

Here, the facts are different.  Recall, ICCU released its lien, and the Idaho Department of Transportation issued a "clean" title certificate for the Vehicle on April 28, 2016.  In other words, from that date until America First perfected its lien, Debtors' pool of assets included the unencumbered value of the Vehicle.  Accordingly, when America First finally perfected its lien, Debtors' assets were diminished by the amount secured by America First's lien.  Because ICCU's lien did not remain on the Vehicle until America First's interest was perfected, the facts here are sufficiently different to render the case law relied upon by America First inapposite.

Trustee has satisfied the § 547(b)(5) "greater amounts test".

**C.     Earmarking**

America First also argues that the so-called "earmarking doctrine" insulates Debtors' transfer of a security interest to America First from avoidance by Trustee as a preference.  America First's Br. at 10, Dkt. No. 26.  Trustee contends that earmarking is inapplicable to the transfer of a

MEMORANDUM OF DECISION – 21

security interest in a refinancing transaction.  Tr.'s Mem. at 9.  The Court

agrees with Trustee.

### 1.    The earmarking doctrine generally

The earmarking doctrine is available under Ninth Circuit case law.

As explained above, under the "diminution of estate doctrine", a transfer

of an interest of the debtor in property occurs where the transfer

diminishes the fund to which creditors could have resorted for repayment

of their debts.  *Estate of Clark E. Adams v. Anderson (In re Superior Stamp &*

*Coin Co.), Inc.*, 223 F.3d 1004, 1007 (9th Cir. 2000) (quoting *Hansen v.*

*MacDonald Meat Co. (In re Kemp Pacific Fisheries, Inc.)*, 16 F.3d 313, 316 (9th

Cir. 1994)).  The earmarking doctrine is an exception to this general rule.

*Id.*  It originated in case law involving situations in which guarantors

satisfied debts owed by debtors.  *Id.* at 1008.  Several courts rejected the

notion that such payments were avoidable preferences because (1) the

transfer was of the guarantor's, not the debtor's, property; and (2) there

was no diminution in the debtor's estate because the transaction merely

substituted one creditor for another.  *Id.* at 1008.  Those courts reached that

MEMORANDUM OF DECISION – 22

result even when the guarantor had entrusted the funds to the debtor with

instructions to use it to pay the creditor. *Id.* Under such facts, the courts

"overlooked the formal distinction that the funds were placed in the

debtor's possession before payment to the old creditor" because the

substance of the second transaction appeared to be identical to the first. *Id.*

For the same reason, this logic has been extended to the situation here:

when a third party lends money to a debtor for the specific purpose of

paying a selected creditor, the payment made by the debtor to the creditor

is not avoidable as a preference. *Id.* (citing *In re Kemp*, 16 F.3d at 316).

Simply put, the earmarking doctrine is generally invoked to protect

a transfer of funds borrowed from a new creditor used to pay off an

existing creditor. But, in this case, the funds America First transferred to

ICCU are not the target of the Trustee's avoidance claim. Instead, America

First asks this Court to apply earmarking logic to the security interest of a

new creditor that was not perfected within the safe harbor period of

§ 547(e)(2)(A).

**2.    Earmarking, § 547(e), and security interests**

MEMORANDUM OF DECISION – 23

To the Court's knowledge, there is no binding precedent in this circuit addressing America First's argument.  However, among the courts that have considered this issue, most have rejected America First's position, including the courts of appeals in the First and Sixth Circuits.  *See Chase Manhattan Mtg. Corp. v. Shapiro (In re Lee)*, 530 F.3d 458, 468–472 (6th Cir. 2008); *Collins v. Greater Atlantic Mortg. Corp. (In re Lazarus)*, 478 F.3d 12 (1st Cir. 2007); *COLLIER ON BANKRUPTCY* ¶ 547.03[2][a], p. 547–25 (16th ed. 2011)(citing cases).

It appears that only courts in the Eighth Circuit have endorsed America First's position that earmarking can be used to insulate an otherwise avoidable transfer of a security interest.  *See Kaler v. Cmty. First Nat'l Bank (In re Heitkamp)*, 137 F.3d 1087 (8th Cir. 1998); *Krigal v. Sterling Nat'l Bank (In re Ward)*, 230 B.R. 115 (8th Cir. BAP 1999); *COLLIER*, ¶ 547.03[2][a], p. 547–25.  In *Heitkamp*, after the debtors obtained waivers from the subcontractors of their liens on its real property, due to an oversight, the bank that made the loan to the debtors used to pay those subcontractor claims failed to record its mortgage on the debtors' property

MEMORANDUM OF DECISION – 24

"for at least three months."  *Ward*, 230 B.R. at 119 (citing *Heitkamp*, 137 F.3d at 1088).  Despite the period of time in which the property was unencumbered, the Eighth Circuit held the earmarking doctrine applied, and that no avoidable preference resulted from the bank's delayed perfection of its lien because the debtors' estate was not diminished and their "assets and net obligations remained the same."  The court concluded that "[e]ssentially, the bank took over the subcontractors' security interest in the house."  *Heitkamp*, 137 F.3d at 1089.  One commentator has described this approach as viewing a refinancing transaction as a "unitary transaction."  *Lee*, 530 F.3d at 469; COLLIER ¶ 547.03[2][a], p. 547–25.

The First Circuit came to a much different conclusion.  As it explained:

> "in refinancing there are multiple transactions including a new loan to the debtor, a mortgage back from the debtor to the new lender, a pre-arranged use of the proceeds of the loan to pay off the old loan and the release of the old mortgage.  Thus, new proceeds are generated, nominally for the benefit of the debtor, and the debtor, by making a new mortgage, transfers a property interest to the new lender."

*Lazarus*, 478 F.3d at 15–16.  Under its view, the First Circuit reasoned that

MEMORANDUM OF DECISION – 25

an "old" creditor does not transfer its mortgage to the "new" lender, but

rather, it releases its mortgage, thereby putting the new lender first in line.

*Id*. at 16.  Thus, to the court, the earmarking doctrine can not provide the

new creditor "an escape from the language of § 547(b) in the case of a

belatedly-perfected transfer of a security interest."  *Id.*  And while it

acknowledged the Eighth Circuit's contrary holding in *Heitkamp*, it

observed that such approach "has been justly opposed on the ground that

it amounts to ignoring the statutory language."  *Id.* (citing *Vieira v. Anna

Nat'l Bank (In re Messamore)*, 250 B.R. 913, 917 (Bankr. S.D. Ill. 2000);

*Sheehan v. Valley Nat'l Bank (In re Shreves)*, 272 B.R. 614, 625 (Bankr. N.D.

W.Va. 2001); and *Gold v. Interstate Fin. Corp. (In re Schmiel)*, 319 B.R. 520,

528 (Bankr. E.D. Mich. 2005)).

The Sixth Circuit would later decide that the *Heitkamp* analysis of a

refinancing transaction ignores the Code's definition of a "transfer" set

forth in § 101(54), as supplemented by § 547(e), because a correct

application of that definition "leads to the inescapable conclusion" that

refinancing involves multiple transfers, including the grant of a security

MEMORANDUM OF DECISION – 26

interest by the debtor to the new lender.  *Lee*, 530 F.3d at 471.

The Sixth Circuit also noted three additional reasons to reject *Heitkamp*.  First, it held that a debtor's grant of a lien in a refinancing transaction–as opposed to a transfer of funds situation–does not involve "earmarked" property.  *Id.*  It reasoned that, in contrast to the transfer of funds provided by a new creditor to pay an existing creditor that the earmarking doctrine was originally designed to protect, the transfer of a lien to the new lender is most assuredly a transfer of a property interest owned and a transaction controlled by the debtor.  *Id.*  Second, where the delayed perfection creates a period of time when property is unsecured, the subsequent perfection and transfer of the security interest from the debtor to the new lender does result in a diminution of the debtor's assets.  *Id.* at 472.  And finally, "applying the earmarking doctrine to insulate [the new creditor] from preference liability would essentially write § 547(e) out of the Code and defeat the sound policy the statute was intended to promote—discouragement of secret liens."  *Id.*

MEMORANDUM OF DECISION – 27

### 3.     Earmarking does not apply here.

After due consideration, based upon the facts in this case, the Court is inclined to join the majority of cases; it therefore declines to endorse America First's argument.

Given the thorough analysis of America First's position in the decisions of the First and Sixth Circuits, the Court has little new to add to the case law discussion of this issue.  In this Court's opinion, a refinancing transaction involves multiple "transfers" as that term is defined by the Code.   In other words, Debtors' transfer to America First did not involve "earmarked" property *i.e.,* the loan proceeds received paid to ICCU, but instead, was a transfer of an interest in the Vehicle.  And, as explained previously, when America First failed to take advantage of the benefits of the safe haven of § 547(e)(2)(A), and the date of the transfer of the security interest is deemed to have occurred long after ICCU released its lien, there was, indeed, a diminution in Debtor's assets.  To hold otherwise would render § 547(e)(2)(A) meaningless in any delayed perfection case,

MEMORANDUM OF DECISION – 28

something the Court declines to do.

For these reasons, Debtors' transfer of the security interest in the

Vehicle to America First is not immune from preference avoidance under

the earmarking doctrine.

**D.    There are genuine issues of material fact concerning whether Debtors' transfer of the security interest in the Vehicle to America First was a contemporaneous exchange for new value and immune from avoidance under § 547(c)(1).**

Even if Debtors' transfer to America First satisfies all of the

requirements for a preference under § 547(b), it cannot be avoided by

Trustee if one of the exceptions in § 547(c) applies.  Of those defenses to

avoidance, America First argues that its security interest may not be

avoided because, under § 547(c)(1), the transfer was a substantially

contemporaneous exchange for new value.  America First's Mem. at 11,

Dkt. No. 26.  Trustee disagrees with this argument.  Tr.'s Reply at 6, Dkt.

No. 36.

Section 547(c)(1) provides that a trustee may not avoid a transfer as

a preference to the extent it was:

MEMORANDUM OF DECISION – 29

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange.

§ 547(c)(1).

The parties did not address whether Debtors and America First both intended the security interest to be transferred contemporaneously with the exchange of the funds to ICCU to refinance the loan. Instead, in their submissions and arguments, they focused solely on whether the "exchange" that occurred in this case was "in fact substantially contemporaneous". Whether the transfer is substantially contemporaneous is a question of fact. *Id.* at 911. Under § 547(g), America First bears the burden of proving the that the transfer is immune from avoidance under § 547(c)(1).

As explained above, because America First's security interest was not perfected within the 30 days allotted by § 547(e)(2), the transfer is deemed to have occurred at the time its security interest was perfected,

MEMORANDUM OF DECISION – 30

which, on this vague record, was anywhere from 37 to 48 days after the

Note was executed.  But that America First failed to perfect its interest

within the 30 days specified in § 547(e)(2), does not, standing alone,

prevent the transaction from being a substantially contemporaneous

exchange.  Indeed, the Ninth Circuit Bankruptcy Appellate Panel has held

that "[i]nstead of applying the strict ten-day [now 30-day] limit

enumerated in § 547(e)(2), an inquiry into the facts and circumstances of

the particular transaction should be made to determine whether a transfer

was substantially contemporaneous in fact."  *Dye v. Rivera (In re Marino)*,

193 B.R. 907, 916 (9th Cir. BAP 1996), *aff'd*, 117 F.3d 1425 (9th Cir. 1997).

And "when the delayed perfection of a security interest can be

satisfactorily explained, the transfer may still be characterized as

substantially contemporaneous in fact."  *Id.*  at 915.  The factors used to

decide if America First has "satisfactorily explained" the delay in

perfection of its security interest include the clarity of the parties' intent

that the transaction be a contemporaneous exchange; the length of the

MEMORANDUM OF DECISION – 31

delay after the 30-day safe harbor provided in § 547(e)(2); whether there

were unforseen circumstances not attributable to the perfecting party; and

whether the creditor was dilatory or negligent in its actions. *See Id.* at 916.

Because of the factual "holes" in the record submitted by the parties,

the Court cannot determine if summary judgment is appropriate

concerning America First's § 547(c)(1) defense.  As has been noted, the facts

are unclear concerning the precise date of the perfection of America First's

security interest.  And the following are questions of fact not established in

the record: (1) How/why did America First miss the mistake on the First

Title Application? (2) When/how did America First learn of the error? (3)

When/how did America First send the Second Title Application  to Debtors

in Idaho? And (4) when/how did America First submit the Second Title

Application to the Idaho Department of Transportation.  All of these facts

could be material in determining whether America First can satisfactorily

explain its delay in perfecting its security interest such that the Court can

find that Debtors' transfer of that security interest to America First was in

MEMORANDUM OF DECISION – 32

fact substantially contemporaneous, and thus excepted from avoidance by

Trustee as a preference under § 547(c)(1).[5]

     In sum, neither of the parties presented adequate evidence to

establish, as undisputed fact, whether the parties intended Debtors'

transfer of the security interest to America First to be contemporaneous

with the loan.  More importantly, though, neither party has established via

undisputed facts that this transfer was, or was not, in fact, a substantially

contemporaneous exchange.  For these reasons, the Court cannot decide

whether § 547(c)(1) applies in this case, and as a result, both parties'

motions for summary judgment must be denied.

**E.    America First is not entitled to a replacement lien under
§ 550(e)(2).**

     Finally, America First argues that, even if its security interest in the

Vehicle is avoided as a preference, under § 550(e), it is entitled to a lien on

---

[5] Put another way, most of these facts will bear on whether, under these facts, there were "unforeseen circumstances " not attributable to America First, and whether America First was "dilatory or negligent", in the perfection of its security interest.  *See In re Marino*, 193 B.R. at 916.

MEMORANDUM OF DECISION – 33

the Vehicle for the value it paid to Idaho Central.  America First's Mem. at

13.  Trustee responds by arguing that § 550(e) does not protect holders of

avoided non-possessory security interests.  Tr.'s Reply at 7 (citing *Hendon*

*v. G.E. Capital Mortg. Servs., Inc.)*, 266 B.R. 671, 676 (Bankr. E.D. Tenn.

2001)).

 Section 550(a) provides that, to the extent a transfer is avoided under

§ 547, the trustee may recover, for the benefit of the estate, the property

transferred from the initial transferee of such transfer.  But, under section

550(e):

> (1) a good faith transferee from whom the trustee may recover
> under [§ 550(a)] has a lien on the property recovered to secure
> the lesser of—
>> (A) the cost, to such transferee of any improvement
>> made after the transfer, less the amount of any profit
>> realized by or accruing to such transferee from such
>> property; and
>> (B) any increase in the value of such property as a result
>> of such improvement, of the property transferred.
>
> (2) in this subsection, "improvement" includes —
>> * * *
>> (D) payment of any debt secured by a lien on such
>> property that is superior or equal to the rights of the

MEMORANDUM OF DECISION – 34

trustee . . . .

§ 550(e).

While Trustee and America First engage in an interesting argument about whether § 550(e) can ever apply when a creditor's non-possessory security interest is avoided under § 547(b), the Court need not consider that issue under these facts.  Here, § 550(e) is inapplicable for a different, much simpler reason.

While the exact date that America First paid ICCU is unclear, it is undisputed that it made that payment before the transfer of the security interest to America First occurred.  Replacement liens under § 550(e)(1)(A) are limited to the cost of improvements "made after the transfer."  Accordingly, even if § 550(e) could apply in cases involving avoidance of a non-possessory security interest, America First would not be entitled to a replacement lien on the Vehicle because its payment to ICCU was made before the transfer of the security interest.[6]  Given these undisputed facts,

---

[6] Of course, to qualify for a § 550(e) replacement lien, America First must establish that its payment to ICCU constitutes an "improvement" for purposes of

MEMORANDUM OF DECISION – 35

the Court holds that if America First's lien is avoidable as a preference, it is

not entitled to a lien on the Vehicle under § 550(e).

### Conclusion

For the reasons explained above, Trustee's motions for summary

judgment will be granted, but only in part; America First's motion for

summary judgment will be denied.  However, on this record, the Court

will grant partial summary judgment in favor of Trustee on two issues.

First, via the partial summary judgment, the Court adjudges that the

requirements for avoidance under § 547(b) have been met such that the

transfer of the security interest from Debtors to America First was a

preference.  Moreover, if, after further proceedings, the Court ultimately

decides that America First's security interest is avoidable by Trustee as a

preference under § 550(a), the Court hereby adjudges that America First is

not entitled to a replacement lien on the Vehicle under § 550(e).  However,

because there remain genuine issues of material fact concerning whether

§ 550(e).  It has not done so, and as a result, the Court expresses no opinion on
this issue.

MEMORANDUM OF DECISION – 36

the exchange was a substantially contemporaneous exchange, the Court

can not finally decide whether the transfer of the security interest to

Americas First is excepted from avoidance under § 547(c)(1).

A separate order will be entered.

Dated:  September 18, 2017

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 37